IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
MAY 26 2005
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

| | |
|---|---|
| BILLY D. PARKS<br>and<br>CAROL B. PARKS,<br><br>   Plaintiffs<br>v.<br><br>NEWMAR CORPORATION,<br><br>   Third-Party Plaintiff,<br>v.<br><br>SPARTAN CHASSIS, INC.,<br><br>   Third-Party Defendant | )<br>)<br>)<br>)<br>)<br>) Civil Action No. 6:04CV013<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on the motion to compel discovery brought by third party defendant Spartan Chassis, Inc. ("Spartan"). In this diversity case, plaintiffs Billy and Carol Parks bought suit in Bedford County Circuit Court against Newmar Corporation ("Newmar") under the Motor Vehicle Warranty Enforcement Act, Va. Code § 59.1-207.9 et seq., commonly referred to as the Lemon Law, alleging persistent defects in a 2003 Dutch Star motor home. Two of the defects claimed concern the air suspension system and corrosion. Paragraph 8 of the Motion for Judgment also asserts a breach of express and implied warranties under the Virginia Commercial Code. Newmar filed a third party complaint against defendant Spartan, which allegedly manufactured the chassis for the motor home.

Following examination of the vehicle, Spartan's expert witness, Allen Brethorst, identified a valve on the number two air reservoir which he contends is the cause of the air suspension problem. His report details:

> I found a faulty valve on the number two air reservoir. . . . As you know, the replacement of the noted valve is a simple task. I would recommend replacement of the valve in question and a mechanical check of reservoir air pressure/compressor cutout adjustment at the consumers earliest convenience.
>
> The valve and related fittings contain substantial corrosion as does the surrounding underside of the vehicle. It is possible that the corrosion has played a part in the failure of the valve. IE: Instrusion or blockage of any vent or orifice designed into the external portion of the valve.

Brethorst Report at 1.

Spartan has filed a motion to compel seeking removal and examination of the valve in question, and has indicated that it will bear the expense of its removal and replacement. Spartan also indicates that the examination of the valve can be arranged in a manner such that all of the parties can participate. Spartan submits that examination of the valve is relevant and therefore permitted under Fed. R. Civ. P. 26(b)(1) because the cause of the failure of the valve is at issue. In particular, Spartan argues that examination of the valve will reveal whether the failure of the valve was due to plaintiffs' own abuse and neglect which it has asserted as an affirmative defense. Spartan's expert Brethorst believes that examination of the valve is central to determining the problem with the air suspension system of the motor home. The report of plaintiff's expert witness, John Shimp, indicates that the air suspension system is defective, but does not indicate how or why the suspension is defective. Shimp's report does note he "agrees with Brethorst that the suspension system is defective." Shimp Report at 2.

Plaintiffs contend that examination of the valve is not relevant and is overly burdensome. As regards relevance, plaintiffs argue on the basis of certain evidentiary rulings in a state court Lemon Law case, <u>Angela Akers v. Hyundai Motor America, Inc.</u>, No. 680CL0302023960-00 (Lynchburg Circuit March 10-11, 2004), that evidence regarding the condition of the valve at present is not relevant. In <u>Akers</u>, the Lynchburg City Circuit Court exercised its discretion to exclude testimony from a defense expert witness in a Lemon Law case based on examination of the vehicle nearly two years after its purchase. Akers obtained a jury verdict and defendant petitioned the Virginia Supreme Court for an appeal. In her Brief in Opposition to the Petition for Appeal, Akers explained the basis for her argument that the exclusion of the expert's testimony was not error, as follows:

> By the time Hyundai's experts examined the car in 2003, Akers had taken the car to other mechanics. The car also had been driven almost another 20,000 miles between 2001 and the experts' examination. There was no indication that the was in the same condition in February and November, 2003, as it had been during the six months of warranty service in 2001. The trial court did not abuse its discretion in excluding expert testimony which purported to use the 2003 examination to discuss the car's 2001 condition.

Aker's Brief in Opposition to Petition for Appeal at 10. As the Virginia Supreme Court did not grant the Petition for Appeal, plaintiffs contend that the ruling in <u>Akers</u> renders examination of the value on the motor home irrelevant.

Plaintiff's argument that the <u>Akers</u> case precludes the requested examination of the valve at issue in this case is misplaced. First, <u>Akers</u> concerned admission of trial testimony, and not the ability to take discovery under Fed. R. Civ. P. 26. Even so, the admission of expert testimony in federal court is governed by a different standard than that controlling such evidence in state

3

court.  See Fed. R. Evid. 702; Daubert v. Merrill Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993); Kuhmo Tire v. Carmichael, 526 U.S. 137 (1999).  Second, in that case, Akers argued that because of intervening repairs and substantial additional mileage, the vehicle was not in the same or similar condition in 2003 as it was during the 2001 Lemon Law period.  Indeed, Aker's Petition for Appeal refers to the Hyundai Elantra in that case as a "re-worked vehicle."  Aker's Brief in Opposition to Petition for Appeal at 7.  In contrast, there no suggestion that the valve in question has been subject to any intervening repairs or has been "re-worked."  While plaintiff contends that the valve has been subject to ongoing corrosion, such a contention is insufficient at this stage to preclude examination of the valve during discovery.  Moreover, while the Elantra in Akers was driven an additional 20,000 miles after the Lemon Law warranty period, at argument, counsel for plaintiffs indicated that the subject motor home is garaged and is not being driven at all.  Moreover, to the extent that plaintiffs' argument rests on a notion that defendants' proof is confined to the narrow window of Virginia's Lemon Law warranty period, such a theory is inconsistent with its own pleading as the Motion for Judgment alternatively alleges a violation of Virginia's Commercial Code.

Finally, plaintiff's objection regarding burden is not well taken.  Plaintiff argues that defendants already have examined the motor home on one occasion and that they will need to travel from Florida to allow access to the motor home for the examination of the valve.  While is true that defendant's expert has previously examined the motor home, no examination has been done of the valve itself.  As Spartan indicates that it will replace and examine the valve at its expense, there is no undue burden to plaintiff.  To the extent that plaintiffs claim inconvenience by coming to Virginia from Florida to facilitate the examination, they can hardly be unduly

burdened by allowing access to the motor home located in Bedford County as they brought the action there.

For all of these reasons, Defendant's motion to compel examination of the valve in question is **GRANTED**. Defendant Spartan shall arrange to have the valve removed and replaced at its expense. Any inspection and examination of the valve should be coordinated with counsel for all of the parties so that all experts involved in this case may be present and participate.

It is so **ORDERED**.

Enter this 25th day of May, 2005.

Michael F. Urbanski
United States Magistrate Judge