CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
AUG 17 2005
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| BILLY D. PARKS;<br>CAROL B. PARKS,<br><br>*Plaintiffs,*<br><br>v.<br><br>NEWMAR CORPORATION,<br><br>*Defendant and Third-Party Plaintiff,*<br><br>v.<br><br>SPARTAN CHASSIS, INC.,<br><br>*Third-Party Defendant.* | CIVIL ACTION NO. 6:04-CV-0013<br><br><br>MEMORANDUM OPINION<br><br><br>JUDGE NORMAN K. MOON |

This Matter is before the Court on Defendant Newmar Corporation's Motion for Summary Judgment, filed January 7, 2005. The Court held a hearing on this motion on July 29, 2005. For the reasons stated below, the Court GRANTS Defendant's Motion for Summary Judgment.

I. BACKGROUND

The plaintiffs, Billy and Carol Parks, purchased a 2003 Dutch Star motor home from Koogler Sales and Services, Inc. ("Koogler Sales" or "Koogler"), of Fishersville, Virginia.

1

Koogler Sales is an authorized dealer of Defendant Newmar Corporation ("Newmar"). Newmar manufactured Plaintiffs' motor home. At the time of the purchase, Newmar made various express and implied warranties to Plaintiffs. Following their purchase, Plaintiffs allege that they experienced various defects with the motor home, including an inconsistent ride height which caused it to porpoise at highway speeds and made it difficult to control or operate at such speeds. As a result, Plaintiffs returned the motor home several times for repairs to Koogler. Koogler was unable to repair the air-suspension system after five unsuccessful attempts. Plaintiffs also notified Newmar of the motor home's defects in writing.

On March 4, 2004, Plaintiffs filed a motion for judgment against Defendant Newmar in the Circuit Court for the County of Bedford, seeking relief under the Virginia Motor Vehicle Warranty Enforcement Act ("the Act"), Virginia Code § 59.1-207.9 *et seq.*, and the Commercial Code of Virginia, Virginia Code § 8.2 *et seq.* On April 2, 2004, Defendant Newmar removed this action to federal court. On April 12, 2004, Defendant Newmar added Spartan Chassis, Inc. ("Spartan Chassis" or "Spartan") as a third-party defendant.

On October 14, 2004, this Court held a hearing on Defendant Newmar's 12(b)(6) Motion to Dismiss, in which Newmar argued that Plaintiffs should not be able to pursue their claims against Newmar under the Virginia Motor Vehicle Warranty Enforcement Act because it is not a "manufacturer" of motor vehicles as defined by the Act.[1] On October 22, 2004, the Court issued

---

[1] Virginia Code § 59.1-207.11 defines a "manufacturer" who is subject to liability under the Act as "a person, partnership, association, corporation or entity engaged in the business of manufacturing or assembling motor vehicles, or of distributing motor vehicles to motor vehicle dealers." Va. Code Ann. § 59.1-207.11 (2001). The Act goes on to define a "motor vehicle" as "*only* passenger cars, pickup or panel trucks, motorcyles, *self-propelled motorized chassis of motor homes* . . . ." *Id.* (emphasis added). Thus, Newmar argued, as it does in this motion for summary judgment, that because it manufacturers motor homes, not the self-propelled

a memorandum opinion denying Newmar's Motion to Dismiss, stating that although it was clear that Newmar is not "engaged in the business of" manufacturing or distributing motor vehicles, more discovery was needed to determine whether Newmar is "engaged in the business of" assembling motor vehicles, thus qualifying it as a manufacturer of motor vehicles under the Act. *See* Va. Code Ann. § 59.1-207.11 (2001). The parties have completed more discovery, and now Defendant Newmar brings its Motion for Summary Judgment, arguing that it does not manufacture, distribute, or assemble motor vehicles as defined by the Act, and thus is not a "manufacturer" of motor vehicles for purposes of the Act.

## II. STANDARD OF ANALYSIS

Summary judgment under Federal Rule of Civil Procedure 56 is appropriate only when the court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–50 (1986); *Terry's Floor Fashions, Inc. v. Burlington Indus., Inc.,* 763 F.2d 604, 610 (4th Cir. 1985). Once a party has properly filed evidence supporting the motion for summary judgment, the nonmoving party may not rest upon mere allegations in the pleadings, but must instead set forth specific facts illustrating genuine issues for trial. *Celotex Corp.,* 477 U.S. at 322–24. Such facts must be presented in the form of exhibits and sworn affidavits. *Int'l Longshoremen's Assoc., Steamship Clerks Local 1624 v. Va. Int'l Terminals, Inc.,* 904 F. Supp. 500, 506 (E.D. Va. 1995). Failure by Plaintiffs to rebut

---

motorized chasses of motor homes, it is not a manufacturer under the Act and thus is not liable to Plaintiff under the Act.

3

Defendants' motion with such evidence will result in summary judgment when appropriate. *Id.* "[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

## III. REASONING

The Motor Vehicle Warranty Enforcement Act, Virginia Code § 59.1-207.9 *et seq.*, commonly known as the Virginia lemon law, creates a remedy for purchasers of motor vehicles against motor vehicle manufacturers if the manufacturer does not conform the motor vehicle to any applicable warranty by repairing or correcting any defect or condition which "significantly impairs the use, market value, or safety of the motor vehicle" after a reasonable number of attempts within eighteen months of delivery of the vehicle. *See* Va. Code Ann. § 59.1-207.13(A) & 207.11 (2001). Plaintiffs contend that Defendant Newmar is liable under the Virginia lemon law because Newmar made certain express and implied warranties on the motor home at the time of purchase, the motor home has persistent non-conformities or defects which have been subject to repair three or more times by the manufacturer, and these defects continue to exist well past the eighteen-month period. *See id.* § 207.13(A).

The Act defines a "manufacturer" as a "person, partnership, association, corporation or entity engaged in the business of manufacturing or assembling motor vehicles, or of distributing motor vehicles to motor vehicle dealers." Va. Code Ann. § 59.1-207.11 (2001). The same section defines "motor vehicles" as "*only* passenger cars, pickup or panel trucks, motorcycles, self-propelled motorized chassis of motor homes. . . ." *Id.* (emphasis added). A "self-propelled

4

motorized chassis" is the frame, wheels, and engine of a motor vehicle, but not the body. *See* Webster's New World Dictionary (1984); Klotz Dep. 8, Mar. 3, 2005. Newmar does not manufacture the self-propelled motorized chassis of its motor homes, but rather purchases the chassis from another manufacturer and then adds the living quarters and body of the vehicle to the chassis. Klotz Dep. 8. In this case, Newmar purchased the self-propelled motorized chassis from Third-Party Defendant Spartan Chassis, and then added the body and living quarters to the chassis before selling the final product to Plaintiffs.

As the Court stated earlier in its memorandum opinion denying Defendant's motion to dismiss, it is clear that Newmar is not in the business of "manufacturing" self-propelled motorized chassis of motor homes. Newmar is a manufacturer of motor homes, not the self-propelled chassis of motor homes. Nor is Newmar engaged in the business of "distributing motor vehicles to motor vehicle dealers." *See* Va. Code Ann. § 59.1-207.11 (2001). Newmar distributes *motor homes* to *motor home* dealers, but motor homes are not "motor vehicles" for purposes of the Act. *See id.* Accordingly, the Court is left with the question of whether Newmar, in the course of adding the living quarters and the body of the motor home to the self-propelled motorized chassis, assembles some part of the chassis. If it does, then Newmar qualifies as a "manufacturer" under the Act because it assembles the self-propelled motorized chassis of motor homes. *See id.*

The parties have submitted depositions from representatives of both Newmar and Spartan detailing Newmar's process of completing the motor home after it receives a chassis from a manufacturer such as Spartan. During the process of adding the body of the motor home to the chassis, Newmar "puts in place" a permanent steering wheel and a steering column. Klotz Dep.

5

8–10, Mar. 3, 2005; Brethorst Dep. 23, Apr. 14, 2005. Spartan or another chassis manufacturer supplies both of these items, and the entire process takes about ten minutes. Klotz Dep. 9; Brethorst Dep. 24. In some cases, Newmar will add brake and throttle pedals to the chassis, also supplied by the chassis manufacturer. Kinsey Dep. 15, 26–29, Apr. 14, 2005. However, the chassis can be moved between Newmar's production facilities without the pedals. *Id.* Newmar also "places on" the hubcaps, which Spartan supplies. Klotz Dep. 27. This process involves no more than snapping on the hubcaps or tightening them with a screw. *Id.* In addition, the hubcaps are merely "cosmetic" and a consumer could safely drive the motor home without them. *Id.* Newmar also performs a final check of the alignment of the axles after the body of the home is installed, in order to make sure that the addition of the body did not change the alignment of the chassis. Kinsey Dep. 13. But this check involves no more than someone standing and looking at the motor home to make sure that the height above ground is correct. Brethorst Dep. 30. Newmar also performs a final check of the cooling system. Kinsey Dep. 17–18. Finally, Newmar checks that the motor home conforms to all applicable safety and emission standards. *Id.* at 19. Newmar does not add any other items to the self-propelled motorized chassis.

The Court finds that, based on the evidence, there is no genuine issue of fact as to whether Newmar is "engaged in the business of" assembling motor vehicles for purposes of the Act. It is clear that Newmar does not assemble the self-propelled motorized chassis of motor homes and did not assemble the chassis in this case. The items that Newmar adds to the chassis require only a minimal amount of time and effort. It only takes about ten minutes to place on the steering wheel, and the hubcaps only need to be snapped on or tightened with a screw. The hubcaps are added for purely aesthetic reasons and do not add anything to the self-propulsion of

6

the vehicle. In addition, all of the items added by Newmar are provided by Spartan. In fact, if Spartan sent a chassis to Newmar with these items already installed, Newmar would have to remove these items and reattach them after it added the body of the motor home. Therefore, the chassis is as complete as it possibly can be when it arrives from Spartan. Further, the fact that Newmar performs final checks of the alignment and the cooling system after the motor home is completed, and checks that it conforms to safety and emission standards, does not mean that Newmar performs any assembly of the chassis. Newmar performs these checks simply to confirm that its addition of the body and living quarters to the chassis did not alter the specifications of the chassis it received from Spartan.

In addition, the Court finds instructive the District of Minnesota case of *Anderson v. Newmar Corporation*, the only case the Court could find that addresses this issue.[2] In *Anderson*, the plaintiff sued Defendant Newmar under Minnesota's lemon law, which is nearly identical to Virginia's lemon law. The Court in that case found that Newmar did not qualify as a manufacturer of motor vehicles within the definition of the Minnesota act because Newmar did not manufacture, assemble, or distribute the self-propelled motorized chassis of motor homes. *See Anderson v. Newmar Corp.*, 319 F. Supp. 2d 943, 946 (D. Minn. 2004) (quoting Minnesota statute section 325F.665, which defines a "motor vehicle" as the "self-propelled motor vehicle chassis" of a motor home). The Court stated:

> Had the legislature intended final stage manufacturers such as Newmar to be liable for alleged lemon law violations, the legislature would have included the term 'final stage manufacturer' in the lemon law. Instead, the language of the lemon law makes clear that, when a motor home is involved, the only entity that can be liable for defects is the manufacturer, assembler, or

---

[2] The Court could not find any case on point in this district or any Fourth Circuit case on point.

> distributor of the 'self-propelled motor vehicle chassis or van portion' of the motor home. This definition excludes the final stage manufacturer. . . .

It also is the case here that the drafters of the Virginia lemon law decided to distinguish between manufacturers of "motor homes" and manufacturers of the "self-propelled motorized chassis" of motor homes. A court, when analyzing a statute, must "assume that 'the legislature chose, with care, the words it used when it enacted the relevant statute'" and the court is "bound by those words" when it interprets the statute. *City of Virginia Beach v. ESG Enters., Inc.*, 413 S.E.2d 642, 644 (Va. 1992) (citations omitted). It is clear from the language of the lemon law that the Virginia legislature did not intend to subject final stage manufacturers such as Newmar to liability under the Act.

For these reasons, the Court finds that Newmar does not assemble the self-propelled motorized chassis of the motor homes it manufacturers and distributes and thus is not a "manufacturer" as defined by the Act. Therefore, Newmar cannot be held liable under the Virginia lemon law. Accordingly, the Court GRANTS Defendant Newmar's Motion for Summary Judgment, and Plaintiffs' claim under the Virginia Motor Vehicle Enforcement Act against Defendant Newmar is hereby DISMISSED.

An appropriate Order shall issue.

The Clerk of the Court is directed to send certified copies of this Memorandum Opinion to all Counsel of Record.

ENTERED: *Norman K. Moon*

U.S. District Judge

*August 17, 2005*

8