IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

BILLY D. PARKS, )
   and )
CAROL B. PARKS, )
   Plaintiffs, )
)
v. ) Case No. 6:04-CV-00013
)
NEWMAR CORPORATION, ) By:   Hon. Michael F. Urbanski
   Defendant and )        United States Magistrate Judge
)
   Third-Party Plaintiff, )
v. )
)
SPARTAN CHASSIS, INC., )
   Third-Party Defendant. )

## MEMORANDUM OPINION AND ORDER

On December 31, 2004, defendant Spartan Chassis, Inc.'s ("Spartan") served its Second Request for Production, seeking an opportunity to test and examine an allegedly defective valve on the vehicle. Defendant asserts that this testing and examination is necessary to determine whether the valve's failure was caused by plaintiffs' own abuse and neglect, which would be an affirmative defense under the Act. In a Memorandum Opinion and Order dated May 26, 2005, the court granted Spartan's Motion to Compel, ruling that:

> Defendant Spartan shall arrange to have the valve removed and
> replaced at its expense. Any inspection and examination of the
> valve should be coordinated with counsel for all of the parties so
> that all experts involved in this case may be present and participate.

(5/26/05 Mem. Op. & Order at 5.)

Plaintiffs now move the court to reconsider the ruling, contending that the Memorandum Opinion and Order is "in error because it commits the plaintiffs to accept a repair attempt of their

motor vehicle in contravention to the Virginia Motor Vehicle Warranty Enforcement Act, Va. Code § 59.1-207.9 et seq." (referred to hereinafter as "the Act"). (Pl.'s Mot. at 2.)

I

Plaintiffs argue that Spartan did not seek "replacement" of the valve, merely the "inspection" of it. Plaintiffs do not oppose the Order insofar as it allows "inspection." However, plaintiffs do contest "replacement" of the valve, arguing that the valve's replacement is at odds with the public policy reflected in the Act.

In turn, defendant responds that replacing the valve is consistent with the Act. The Act neither requires nor prohibits repairs after eighteen months, and defendant acknowledges that it cannot raise such a late breaking repair of the vehicle as a defense under the Act. As such, defendant contends that plaintiffs' objection to the court's order is baseless.

Further, defendant's expert states that the vehicle cannot be operated without the valve in place. Accordingly, the vehicle would have to remain at the repair facility or be towed to another location. Defendant indicates that leaving the vehicle at the place where the inspection is slated to take place would cost between $50-$100 per week for outside storage, and that exposing the vehicle to the elements would likely cause the vehicle's valve to significantly decline.

II

Virginia Code § 59.1-207.13, the Motor Vehicle Warranty Enforcement Act, provides that if a manufacturer or authorized dealer fails to repair or correct any defects in a motor vehicle as required by the Act during the eighteen month Lemon Law rights period, the manufacturer shall:

2

>   (1)  replace the motor vehicle with a comparable vehicle
>        acceptable to the consumer;
>
>   (2)  accept the return of the vehicle and refund to the consumer
>        . . . the full contract price, including all collateral charges,
>        incidental damages, less a reasonable allowance for the
>        consumer's use of the vehicle up to the date of the first
>        notice of nonconformity that is given to the manufacturer.

Id. It is clear from this provision of the Act that the consumer has control over whether a manufacturer can try to cure a vehicle after the rights period expires.

Plaintiffs' complaint also alleges a violation of the Virginia Uniform Commercial Code, Va. Code § 8.2 et seq. The UCC provision regarding buyer's damages for breach in regard to accepted goods, Virginia Code § 8.2-714, provides that:

> (1) Where the buyer has accepted goods and given notification, he
> may recover as damages for any nonconformity of tender the loss
> resulting in the ordinary course of events from the seller's breach
> as determined in any manner which is reasonable.
>
> (2) The measure of damages for breach of warranty is the
> difference at the time and place of acceptance between the value of
> the goods accepted and the value they would have had if they had
> been as warranted, unless special circumstances show proximate
> damages of a different amount.

Id.

### III

The court's review of applicable law leads to the conclusion that the replacement of the valve is not prohibited by the Act. Indeed, whether or not the valve is replaced is entirely irrelevant to plaintiffs' cause of action under the Act. If the vehicle was defective as defined by the Act at the conclusion of the eighteen-month period provided in the Act, the period of time for defendant to repair the vehicle has expired. Essentially, whether or not defendant replaces the

3

valve at this time is irrelevant to plaintiffs' Lemon Law claim as the eighteen-month period has expired. If plaintiffs can prove that defendant violated the Act, even if defendant's replacement of the valve causes the vehicle to work perfectly now, plaintiffs' remedy under the Act is fixed. As such, the replacement of the valve now matters not one iota to this claim.

The replacement of the valve could affect plaintiffs' cause of action for breach of warranty under the UCC, however. If the vehicle works once the valve is installed, defendant can use this evidence in defense of the UCC claim. Defendant would be entitled to discuss the implications of the replacement on the valve of the vehicle because its replacement is relevant to the level of monetary damages to which plaintiffs would be entitled under that claim. Similarly, plaintiffs would be entitled to present evidence as to how the length of time between tender of the vehicle and the time defendant replaced the valve affected the vehicle's valve. As a result, the issue of whether the vehicle can be repaired by replacing this valve appears relevant to plaintiffs' second cause of action. To the extent that plaintiffs argue that the admission of this evidence may somehow prejudice their claim under the Lemon Law, this issue can be appropriately addressed in jury instructions.

## IV

Plaintiffs also argue that they cannot be forced to have a valve replaced on their motor home if they do not want to do so. Given the public policy in favor of consumer choice reflected in the Lemon Law, that may be true, as far as it goes; but such refusal has consequences in this lawsuit given the manner in which plaintiffs have chosen to plead this case.

On the one hand, if the valve is removed, examined, and not replaced as plaintiffs suggest, the motor home may not be driven and must either be towed back to plaintiffs' residence

4

or stored at a commercial facility. Either way, substantial cost is involved, which plaintiffs contend defendant should bear. On the other hand, if the valve is replaced, the vehicle can be driven back to plaintiffs' residence and garaged there without additional expense. Plaintiffs contend that the valve should not be replaced and that defendant bears the cost associated with their refusal to allow the installation of a replacement valve. Plaintiffs cannot have it both ways, refusing to allow the replacement of the valve and forcing defendant to bear the cost of their refusal. If plaintiffs continue to insist that the valve not be replaced, the financial costs associated with such refusal should be borne by them.

There is another consequence to plaintiffs' refusal to allow the replacement of the valve. The replacement of the valve is relevant to the measure of damages under the UCC claim. Should plaintiffs persist in this claim, and continue to refuse to allow replacement of the valve, such refusal may be offered in evidence as regards the UCC claim. While the removal of the valve and its replacement may not be relevant to the Lemon Law claim because of the specific remedies and time periods set forth in the Act, such refusal is relevant to the UCC claim and plaintiffs' efforts to mitigate its damages under that claim. As such, plaintiffs' refusal to have the valve replaced may be offered in evidence as being relevant to damages and mitigation under the UCC claim.

In sum, while the Court does not believe that it should order plaintiffs to have a new valve installed when the old valve is removed and examined, there are consequences to plaintiffs' refusal. First, plaintiffs, and not defendant, should bear the costs associated with the incapacitation of the motor home resulting from the refusal to allow replacement of the valve.

5

Second, such refusal may be offered into evidence on the issues of damages and mitigation as to the UCC claim.

As such, plaintiffs' motion to reconsider the Memorandum Opinion and Order of May 26, 2005 is **DENIED**, and it is **ORDERED** as follows:

1. Defendant Spartan shall arrange to have the valve removed and inspected at its expense.

2. Should plaintiffs choose to allow the valve to be replaced, Spartan shall replace said valve at its expense.

3. Should plaintiffs choose not to have the valve replaced, plaintiffs shall bear the cost associated with transportation and storage of the motor home.

4. Defendant may seek to introduce into evidence plaintiffs' refusal to allow the valve to be replaced on the issues of the measure of damages and mitigation of the UCC claim.

5. Any inspection and examination of the valve should be coordinated with counsel for all of the parties so that all experts involved in this case may be present and participate.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to all counsel of record.

**ENTER:** This 26 day of August, 2005.

_____
UNITED STATES MAGISTRATE JUDGE

6